THE CHRISTOPHER & SIMPSON ARCHITECTURAL IRON
AND FOUNDRY COMPANY

*v.*

M. YEAGER *et al.*

*Opinion filed April 24, 1903.*

1. CONTRACTS—*when plaintiff's delay cannot be set up as a defense to action for breach.* Delay by a building contractor in signing a contract with defendant for material cannot be set up in defense of an action for damages, where such delay would not have been detrimental if the defendant had complied with the contract in furnishing the material the rejection of which occasioned the breach.

2. SAME—*when question whether plaintiff was reasonable in terminating contract is not for the jury.* The question whether the plaintiff acted reasonably in terminating a contract for materials need not be left to the jury, where the notice of termination was not given until after the contract limit had expired and the defendant had refused to go into the market and replace the material rejected.

3. SAME—*whether contract was re-let on best terms offered is for jury.* If a contract for material for use in a building provides that in case of default the contract may be "re-let on the best terms offered," it is a question for the jury whether the contract was so re-let, and whether the slight deviation made from the specifications in such re-letting was made necessary by the defendant's default in furnishing the material.

4. SAME—*when value of shop drawings cannot be set off.* The value of shop drawings furnished by the defendant cannot be set off in an action for breach, where the drawings were a necessary part of the work performed, and the plaintiff would have been entitled to charge the cost of new shop drawings to the defendant had he not used the ones so furnished.

*Christopher & Simpson Iron Co.* v. *Yeager,* 105 Ill. App. 126, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. F. BOOKWALTER, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the Third District affirming a judgment of the circuit court of Vermilion county in favor of appellees, against the appellant company, for $1480.62 and costs.

The appellees, M. Yeager and Phil Yeager, partners, brought a suit in assumpsit on a written contract entered into between themselves and the appellant, the Christopher & Simpson Architectural Iron and Foundry Company, to recover damages for breach of the contract. The appellees are building contractors, and had a contract with the United States to erect the post-office building at Elgin, Illinois. They entered into a contract with the appellant, by which the appellant agreed to furnish the structural steel work needed for the building, in strict accordance with the plans and specifications as prepared by the supervising architect of the United States treasury department, and to complete and deliver the same in first-class condition, not later than April 20, 1901. This contract was dated October 30, 1900, but was not signed till January 9, 1901. By its terms it was also stipulated that if appellant should fail to provide the materials by the time limited, appellees might, after five days' written notice, provide them themselves and deduct the cost from any money due appellant, or if, in appellees' judgment, the failure of appellant was "sufficient action," they might, at the expiration of the notice, terminate the contract and re-let the work on the best terms offered, at the expense of appellant. The specifications of appellees' contract with the United States, referred to in the contract sued on, provided that shop drawings must be submitted in triplicate, and that no work could be done until after the approval of such drawings by the supervising architect; that all steel must be open-hearth steel, and that ample facilities should at all times be furnished the authorized agent of the government, both at the mills and at the shops, for the inspection of the material, and that no material should be made up, riveted, painted or shipped before it had passed inspection. Appellant pleaded the general issue; also set-off for the value of the shop drawings furnished.

It appears from letters admitted in evidence that appellant, though often requested and urged to furnish the shop drawings, did not send them to the appellees until March 13, and then four drawings were sent in duplicate only, instead of in triplicate. These were not finally sent in and approved by the supervising architect until April 2, 1901. The same day the appellees were also informed of the appointment of Robert W. Hunt & Co. as government inspectors of the structural steel work. April 13 the inspectors wrote to appellees that they had been informed by appellant that the material had been ordered February 23, and that it was taken from stock at the Cambria Steel Company's works. They also wrote that as the specifications called for mill inspection, they were not permitted to accept this material. The supervising architect afterwards waived the requirement of mill inspection, and the inspectors reported that the material stood the required tests, but it developed, about April 30, that the beams were not made out of open-hearth steel, but out of Bessemer steel. Appellees then endeavored to have the supervising architect accept the Bessemer steel, but he absolutely refused to do so. Appellees then desired appellant to get open-hearth steel from stock, having secured the permission of the supervising architect that that would be acceptable, and informed the appellant that it could be procured from the Illinois Steel Company in about two weeks' time. The appellant refused to pay the additional cost, and insisted on being allowed to furnish it from the mills at a delay of from six weeks to six months, as stated by it at various times. After much correspondence, on May 18 appellees sent appellant the five days' notice stipulated for in the contract, but expressed themselves willing to extend the time for the delivery of the material for the first floor to June 1. This offer was not accepted by appellant, and appellees purchased the material from the Illinois Steel Company. Appellant still refusing to fulfill its

contract, appellees let the contract for the remainder of the steel work to the Illinois Steel Company, having received bids for the same to the same amount from two different concerns. Appellees' contract with the United States provided for a forfeiture of $23.80 per day as liquidated damages for every day's delay after the time stipulated for the completion of the building.

James W. & Edward C. Craig, (H. M. Steely, of counsel,) for appellant.

E. R. E. Kimbrough, and J. H. Lewman, for appellees.

Mr. Justice Carter delivered the opinion of the court:

The appellant contends, in the first place, that the court erred in refusing to allow it to show that the negligence of appellees contributed to the delay, and in refusing to give an instruction bearing on that question. The delay complained of was the delay in signing the contract between appellees and appellant. The contract, although originally drawn on October 30, 1900, was not finally signed till January 9, 1901. The court excluded the letters on this subject that passed between the parties, and, we think, rightly. An inspection of the letters in the record shows that appellant secured some changes in the contract before it was finally signed. All previous negotiations were merged in the contract as it was finally signed, and it will be presumed that appellant was satisfied with the time limited for its performance. Besides, if appellant had followed the specifications and ordered open-hearth steel, it would not have found itself in the predicament it was placed in when it had all the material on hand and the same was rejected by the inspectors because it did not comply with the specifications in this respect.

Complaint is also made that the appellant was not notified of the appointment of inspectors until April 8.

Appellant itself was negligent in furnishing the shop drawings, though repeatedly urged to do so by appellees. The inspectors were appointed as soon as the shop drawings were approved, and under the specifications no work was to be begun before their approval. The appellant had, however, taken all risks, and ordered the material contrary to the specifications in two particulars,—that is, of Bessemer steel in stock instead of open-hearth steel to be made for the job,—and this was done five weeks before the drawings were approved. It is evident that none of the delays would really have been detrimental to appellant if it had complied with the specifications. The instruction was properly refused.

The next error assigned is, that the court erred in refusing instructions submitting to the jury the question whether the appellees acted reasonably in terminating the contract. This instruction was properly refused. The time limited by the contract expired April 20, and the five days' notice was not given until May 18, nor until it had been shown that the material provided by appellant would not be accepted by the supervising architect, and that the appellant had refused to go into the market and purchase the material for the first story. The building was then ready for it and the contractors were awaiting its reception, but the appellant insisted on having it made in the mills at a delay the length of which could not be definitely determined, when it could be, and was, in fact, purchased and provided in about one week's time. Appellant also refused positively to furnish the materials for the second story, though given the opportunity to do so.

The next error assigned is the refusing and modifying of instructions relating to the question whether or not the contract was re-let fairly and on the best terms. One of the contentions is, that in re-letting the contract the appellees contracted for heavier material than the specifications called for. This contention is covered by

instruction numbered 5, given for appellant, which instructed the jury that appellees would have no right to charge appellant with the additional cost caused by a change in the sizes and weights of the material. Instructions 17, 19, 20, 21 and 27, as far as they relate to this question, were covered by the instruction given.

Another contention is, that in re-letting the contract appellees contracted for materials that were in stock, at a cost of about $10 a ton extra, instead of getting them from the mill, as the specifications required. It would have taken from four to six months to have this material made at the mills, according to several letters of appellant; in another letter it states that it would take from six to eight weeks. Appellees were ready and waiting for the steel for the first floor, and could not wait on such an uncertainty. They were under a heavy bond, with a heavy penalty in case the building was not finished in the time stipulated. By the terms of their contract with appellant they were authorized, in case of default, to provide such material and deduct the cost from any money due appellant, or to terminate the contract and re-let the work on the best terms offered, at the expense of appellant. Refused instructions 16, 17, 19 and 26 would have instructed the jury that the appellees had no right to purchase materials from stock and charge the additional cost to appellant. None of these instructions was qualified by a direction to the jury to inquire whether, under all the circumstances of the case, it was reasonably necessary to purchase these materials from stock. The instructions as asked were properly refused.

Complaint is also made that the court modified instructions 8, 9 and 10, by inserting the word "substantially," so as to charge the jury that it was sufficient, in re-letting the contract, to obtain *substantially* the same kind of material as the contract called for. Appellant insists that it must have been the same kind of material

absolutely. We perceive no error in this respect. In building contracts a literal compliance with the specifications is not always necessary to a recovery by the contractor. A substantial performance in good faith is, in general, sufficient. (*Keeler* v. *Herr*, 157 Ill. 57; *Shepard* v. *Mills*, 173 id. 223; *Palmer* v. *Meriden Britannia Co.* 188 id. 508; *Foster* v. *McKeown*, 192 id. 339.) The contract authorized the re-letting of the work "on the best terms offered," and it was a question for the jury whether the contract was re-let "on the best terms offered," and whether a slight deviation from the specifications was made necessary by the failure of appellant to furnish the materials promptly, in order to complete the building within the time stipulated. The fourth and sixth instructions fully instructed the jury on the law as to the re-letting of the contract.

Another error assigned is the refusing to give appellant's instructions 13, 14 and 15, referring to the shop drawings and to the question of allowing appellant their value as a set-off. It is apparent from the correspondence and the oral evidence that the shop drawings were a necessary part of the work to be done under the contract, and that if appellees had been compelled to have new shop drawings made they would have been entitled to charge their cost to appellant. The instructions were properly refused.

There are some other criticisms on the instructions and on the admission and exclusion of evidence, which we have examined but find no error in the rulings complained of.

Finding no error in the record the judgment will be affirmed.

*Judgment affirmed.*